IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: STACY HOWARD AND STEPHANIE HOWARD | CHAPTER 13 |
| | CASE NO.: 00-51897-KMS |

| | |
|---|---|
| FINA OIL AND CHEMCIAL *ET AL.* | PLAINTIFFS |
| VERSUS | ADV. PROC. NO. 14-05009 |
| STEPHANIE HOWARD | DEFENDANT |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEBTOR'S MOTION TO ALTER OR AMEND JUDGMENT OR FOR NEW TRIAL**

COME NOW certain Plaintiffs in this Adversary Proceeding previously referred to as the Reynolds Plaintiffs, through counsel, and file their Response in Opposition to the Debtor's Motion to Alter or Amend Judgment or For a New Trial, and in support thereof states as follows:

**INTRODUCTION**

The Debtor has moved for relief under Rule 59(e) of the Fed. R. Civ. P. by filing a Motion to Alter or Amend Judgment or for New Trial ("Motion") and Memorandum in Support ("Memorandum"). In so doing, she re-raises several of her losing arguments that she already submitted in her original Motion for Summary Judgment, along with one completely new argument she could have previously raised – that judicial estoppel should not be applied to her claims for alleged "injunctive relief" (even though some of those claims request, on their face, money damages for the Debtor). However, a Rule 59(e) Motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

1

The Debtor's Motion should be denied for two main reasons. First, it is appropriate for this Court to bar the Debtor from pursuing her claims for alleged injunctive relief because those claims, if successful, would add value to her bankruptcy estate. Second, the Court followed Fifth Circuit precedent when issuing its Judgment, and the result, that the Debtor was estopped from pursuing her undisclosed claims in the Related Proceedings concerning the undisclosed Subject Property, was not a clear error of law or manifestly unjust but in fact was the correct result.

Though the Debtor may be unhappy with the Court's Judgment, this is not grounds for relief under Rule 59(e). "Dissatisfaction with the court's decision … is not a legitimate basis" for granting relief under Rule 59(e). *Soto v. U.S.*, 2011 WL 4929423, *1 (D. Del. Oct. 17, 2011). The Debtor's Motion should be denied.

## STANDARD OF REVIEW

Pursuant to Bankruptcy Rule 9023, a party may move for a new trial or to alter or amend a Judgment under Fed. R. Civ. P. 59. The elements for the Court to consider are as follows: "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law." *Catholic Diocese of Biloxi, Inc. v. Sebelius*, 2013 WL 690990,* 1 (S.D. Miss. Feb. 15, 2013)(Motion to Alter or Amend the Judgment denied).

A Rule 59(e) Motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479. Rather, a Rule 59(e) Motion "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citations omitted). If the Court "reasonably determine[s] that the facts in th[e] case do not warrant the

extraordinary relief associated with the granting of a" Rule 59(e) Motion, it will not abuse its discretion in denying it. *Id.*

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Id.* "Dissatisfaction with the court's decision … is not a legitimate basis" for granting relief under Rule 59(e). *Soto*, 2011 WL 4929423 at *1. "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)(Motion for Reconsideration denied).

First, the Debtor here has not alleged that an intervening change in controlling law has occurred; to the contrary, Courts throughout the Fifth Circuit and beyond continue to uphold and apply *In re Flugence* just as this Court did. *See, e.g., Lewis v. Terrebonne General Med. Centr.*, 2014 WL 4231176 (E.D. La. Aug. 26, 2014)(judicial estoppel applied in a Chapter 13 context when the asset accrued post-Confirmation); *In re Poesnecker*, 2014 WL 5503002 (M.D. Penn. Oct. 30, 2014)(same). *See also, Smith v. Dallas County Hosp. Dist.*, 2014 WL 6991482 (N.D. Tex. Dec. 9, 2014)(judicial estoppel applied in Chapter 13 debtor/plaintiff's federal court case to bar her employment discrimination claims where she did not disclose them during her bankruptcy proceeding, despite her "representation that she did not know she had to disclose" them. *Id.*, * 6.). Further, the Debtor has not alleged that she now has new evidence that was not previously available to her. Therefore, the only element that the Debtor could possibly travel under is the third element – the Debtor must prove the need to correct a clear error of law in this Court's Judgment barring her from proceeding with her Related Proceedings due to judicial estoppel or to prevent manifest injustice. This, as detailed *infra*, she cannot do.

3

Second, the Debtor's Motion submits the brand new argument, which she could have raised previously, that judicial estoppel should not be applied to her claims alleging injunctive relief. The Debtor's Motion is also filled with re-hashed arguments already rejected by this Court. As noted above, a Motion to Alter or Amend Judgment "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Sebelius*, at \*1. The Debtor's Motion should be denied.

## RESPONSE TO DEBTOR'S ARGUMENTS

**I. This Court's Judgment barring the Debtor from pursuing her claims seeking declaratory and/or injunctive relief due to judicial estoppel was not in clear error and will not result in manifest injustice; in fact, it was the correct result.**

This Court correctly found that the Debtor failed to disclose to this Court during her bankruptcy proceeding a piece of real property she had inherited (the "Subject Property") and legal proceedings related to the Subject Property in which she was actively participating and seeking millions of dollars in damages. In doing so, this Court simply followed Fifth Circuit precedent on the issue, as Courts throughout the Fifth Circuit and beyond continue to do.

The Debtor attempts to create a red herring by proclaiming, for the first time, that her claims from her Related Proceedings for alleged injunctive relief should not be barred due to judicial estoppel because they allegedly would not "have resulted in any kind of monetary benefit to the Debtor." (Memorandum, Doc. 86, p. 3). Aside from this notion being false and not being the actual test for whether or not injunctive claims may be barred by judicial estoppel, this new argument may not be properly made in a Motion to Alter or Amend Judgment because it could have been previously made. *Sebelius*, 2013 WL 690990 at \*2 ("Plaintiffs could have asked this Court prior to judgment that, in the alternative, if it found that the case was not ripe for

4

adjudication, it hold the case in abeyance. They did not do so, and Rule 59(e) is not the proper vehicle to present this new argument post judgment."). For this reason alone, the Debtor's Motion should be dismissed.

However, if the Court is inclined to entertain this argument on the merits, the Debtor's argument fails for two reasons. First, though some of the Debtor's claims for alleged "injunctive relief" actually seek money damages, the actual test for whether or not an individual can be barred from seeking injunctive relief due to judicial estoppel has nothing to do with whether or not the claims result in a "monetary benefit" to the Debtor. When applying the actual test, which the Debtor glosses over later in her Memorandum, the Debtor's claims for alleged injunctive relief should be barred because, if successful, they would have added value to her estate. *Tubbs v. Huntington Ingalls, Inc.*, 2011 WL 3891877, *10 (S.D. Miss. 2011).

Second, as the Debtor well knows, both the Mississippi Department of Environmental Quality ("MDEQ") and the Mississippi Commission on Environmental Quality ("MCEQ") have found, in writing, that there is no proof that any of the Plaintiffs to this Adversary Proceeding are responsible for any alleged damage to the Debtor's property.[1] As such, the MDEQ and MCEQ have refused to pursue any enforcement action against the Plaintiffs or anybody else in this matter despite having been on notice of the Debtor's claims since at the latest January 2006, thus debunking the falsehoods that the Debtor's property poses "an immediate environmental harm that, if left unaddressed, would disserve the public interest in several ways" and "the State of Mississippi and its respective environmental regulatory bodies have a compelling interest to

---

[1]  *See* MCEQ Order dated October 24, 2014, attached hereto as Exhibit "1," p. 3; *see also,* letter from Mr. Roy Furrh, General Counsel of the MDEQ, to Circuit Court Judge Lester Williamson dated October 11, 2010, which was attached to the Circuit Court's March 3, 2011 Order in the Circuit Court Lawsuit, Ex. 9 to Plaintiffs' Motion for Summary Judgment, Doc. 45-9, p. 9. Both documents are discussed in detail in Section I(B), *infra*.

5

ensure that hazardous sites and nearby groundwater are remediated without having the taxpayers foot the bill." (Memorandum, Doc. 86, pp. 8, 9).

**A.    The Debtor's alleged injunctive claims, if successful, would add value to her bankruptcy estate.**

The true test for whether or not claims for alleged injunctive relief may be barred due to judicial estoppel, as stated in the Debtor's own cited cases, is whether or not the "claims would have added monetary value to [the Debtor's] bankruptcy estate." *Tubbs v. Huntington Ingalls, Inc.*, 2011 WL 3891877, *10 (S.D. Miss. 2011)(judicial estoppel applied to bar debtor's federal court claims for alleged injunctive relief). In *Tubbs*, the Court held that "success on the merits of [Debtor's] claims for declaratory judgment and injunctive relief could result in her receiving back pay, salary adjustment, and adjustments of retirement benefits. These would have added value to her bankruptcy estate." *Id.*

Similarly, in our case, the Debtor's alleged injunctive relief sought in the MCEQ Litigation – which is where all of her equitable claims relating to the clean-up of the Subject Property from her Circuit Court Lawsuit were transferred to[2] – seeks to have the Plaintiffs in this Adversary Proceeding clean up her allegedly environmentally impacted property (which, as discussed *infra*, the Debtor well knows that both the MDEQ and MCEQ have found multiple times in writing that there is no proof that the Plaintiffs are responsible for). This relief, if awarded, would take what the Debtor alleges is a worthless piece of property[3] and remediate it, thereby adding value to the Subject Property and to her bankruptcy estate. The Debtor has

---

[2]    *See* the December 12, 2005 Memorandum Opinion entered in the Circuit Court suit, Ex. 8 to the Plaintiffs' Motion for Summary Judgment, Doc. 45-8, pgs. 5-6.

[3]    The Debtor alleged in her Affidavit filed in this Adversary Proceeding that the Subject Property is allegedly environmentally impacted to such a degree that she can neither live on the property nor sell it. (Doc. 57-2, ¶ 9).

6

already used her homestead exemption on her real property located in Jones County, Mississippi,[4] where she lives, so any value added to the non-exempt Subject Property (located in Wayne County, Mississippi) would benefit and add value to her bankruptcy estate.

Further, in the District Court Lawsuit, the Debtor seeks alleged "injunctive relief" by way of a declaration imposing money damages on the Plaintiffs "for response costs incurred and/or to be incurred by [the Debtor]." District Court Complaint, Ex. 3 to Plaintiffs' Complaint for Declaratory Judgment, Doc. 63-3, p. 4. This alleged "injunctive" relief actually seeks money damages to be paid to the Debtor.

By contrast, the cases cited by the Debtor, while applying the correct test as set forth above, are inapplicable to the facts of this case. For example, the Debtor's lead case, *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002), involved a situation where the debtor/plaintiff was seeking an injunction in his undisclosed lawsuit "prohibiting [his employer] and its officers, supervisors, agents, employees or successors from engaging in illegal employment practices. He also asks that the Defendants be required to adopt employment practices that are in accordance with federal employment laws." *Id*., at 1288. The Court noted that, there, what the debtor/plaintiff was seeking to do was "change, through injunctive relief, [his employer's] employment practices." In the *Burnes* case, the injunctive relief being sought would not add any value to that debtor/plaintiff's bankruptcy estate.[5] Here, however, the Debtor is seeking to improve a piece of real property, which, if she were successful, would add value (an appraisable dollar amount) to her bankruptcy estate.

The other cases cited by the Debtor:

---

[4]     *See* the Debtor's Summary of Schedules, Schedule C – Property Claimed as Exempt, Ex. 22 to the Plaintiffs' Motion for Summary Judgment, Doc. 45-22, p. 7.

[5]     All other claims brought by the plaintiff/debtor seeking money damages were barred by judicial estoppel. *Burnes*, at 1288-1289.

  i.  In *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289 (11th Cir. 2003), the Court allowed the Chapter 7 debtor/plaintiff's claim for reinstatement, holding that it "would have added nothing of value to the bankruptcy estate even if she properly disclosed it." *Id.*, at 1297. This stands in contrast to the Debtor's sought after relief here, which is a restored piece of real property (said real property comprising a part of her bankruptcy estate), where the real property's actual dollar value would increase, and money damages for alleged "response costs." This would provide an appreciable, monetary increase to the value of the Debtor's bankruptcy estate.

  ii.  In *Grillo v. JPMorgan Chase & Co.*, 2014 WL 2442534 (D. Colorado), the Court never specifies what the debtor/plaintiff's sought after injunctive relief was. However, the lawsuit concerned the debtor/plaintiff's allegations that his mortgage lender would not let him modify his home loan in bad faith, and the debtor/plaintiff's sought after injunctive relief pertained to the need for a loan modification to avoid foreclosure on his home. (*See* Complaint filed in *Grillo v. JPMorgan Chase & Co.*, attached as Exhibit "2," ¶¶ 129-133.) There, the Court held that the debtor/plaintiff's "claims for injunctive relief were never the property of the bankruptcy estate and did not represent an asset that could have been used to satisfy his creditors." *Id.*, at * 5. This holding is inapplicable to our case because here, if the Debtor were successful in her claims for alleged injunctive relief (obtaining the clean-up of the Subject Property and receiving money damages for alleged clean-up costs), she would be adding increased value to her bankruptcy estate and that increased value would be available to satisfy her previously unpaid unsecured creditors. [6]

---

[6] Furthermore, "the duty to disclose an asset is not determined by whether that asset is property of the bankruptcy estate. *In re Flugence*, 738 F.3d at 129-30." Opinion, at p. 16 n.12

iii.     In *Bridgewater v. Northrop Grumman Ship Sys., Inc.*, 2007 WL 4224212 (S.D. Miss.), just like above in the Debtor's lead case (*Burnes*), the debtor/plaintiff sought injunctive relief "to prevent alleged continuing, systemic, and unjustified race discrimination by Defendant." *Id.*, *3. Again, such sought after relief would not add value to that debtor/plaintiff's bankruptcy estate. Here, though, the Debtor seeks the clean-up of the Subject Property, which would provide an appreciable, appraisable increase in value to the Subject Property, and money damages for "response costs," both of which would add value to her bankruptcy estate.

**B.     The Debtor's undisclosed Subject Property is not "an immediate environmental harm," and there is zero evidence in this record (or elsewhere) to support this baseless statement.**

In her Motion, and without the slightest bit of evidence in support, the Debtor opines that her claims for alleged injunctive relief were to "remediate an immediate environmental harm that, if left unaddressed, would disserve the public interest in several ways." Motion, p. 8. The Debtor goes on to allege that the "innocent neighbors of the subject property are exposed to the strong potential of migration of waste onto their property and/or beneath their property into the ground water" and that "the State of Mississippi and its respective environmental regulatory bodies have a compelling interest to ensure that hazardous sites and nearby ground water are remediated without having the taxpayers foot the bill." Motion, p. 9. There is zero support in this record for these allegations, and regardless, the Reynolds Plaintiffs are not liable for the alleged condition of the Subject Property.

First, the MDEQ and the MCEQ have both stated several times in writing over the past seven years that there is no evidence connecting the Reynolds Plaintiffs (or any of the other

9

Plaintiffs to the Adversary Proceeding) to the alleged environmental impacts to the Subject Property. This most recently was stated by the MCEQ in its Order in the MCEQ Litigation dated October 24, 2013 (attached hereto as Exhibit "1," p. 3):

> After investigating the allegations and claims in the [Debtor's] petition, MDEQ informed the [Debtor's] counsel by correspondence dated May 24, 2007, and July 25, 2007, that there was insufficient evidence on which to proceed with an enforcement action against the [Plaintiffs to this Adversary Proceeding].

Similarly, Mr. Roy Furrh, General Counsel of the MDEQ, wrote a letter to Circuit Court Judge Lester Williamson dated October 11, 2010, which was attached to the Circuit Court's March 3, 2011 Order in the Circuit Court Lawsuit, stating the following:

> MDEQ, as staff for the Commission, has made a determination, based on the review of the information submitted by the Plaintiff against the oil company Defendants, that there is insufficient evidence to pursue an enforcement action against the oil company Defendants. Proof is lacking to tie the oil company Defendants to the property.

Ex. 9 to Plaintiff's Motion for Summary Judgment, Doc. 45-9, p. 9. The Plaintiffs to this Adversary Proceeding are not liable for the alleged condition of the Subject Property.

Second, the State of Mississippi, through the MDEQ and MCEQ, has known of the Debtor's claims regarding the Subject Property since at the latest January 2006 when she filed her Petition with the MCEQ. However, despite this knowledge, neither the MDEQ nor the MCEQ has taken any action whatsoever to remediate the Subject Property. If the Subject Property constituted such an "immediate environmental harm," as the Debtor contends, where is the sense of urgency on the part of the MDEQ and MCEQ?

Third, the Reynolds Plaintiff put both the MDEQ and MCEQ on notice that they were attempting to have the Debtor barred in this Court from pursuing her MCEQ Litigation due to judicial estoppel. *See* Notice of Petitioner's Re-Opened Bankruptcy Proceeding filed by the Plaintiffs to this Adversary Proceeding in the MCEQ Litigation on February 14, 2014, attached

10

hereto (without its Exhibits) as Exhibit "3." Further, the Reynolds Plaintiffs then notified the MDEQ, the MCEQ, and the appointed hearing officer once this Court's Judgment was entered barring the Debtor from further pursuing the MCEQ Litigation. *See* letter dated October 27, 2014, attached hereto as Exhibit "4." Yet neither the MDEQ nor the MCEQ has attempted to intervene in this matter or take any action whatsoever indicating any type of alarm or concern over the condition of the Subject Property. The MDEQ and MCEQ's inaction in this regard speaks volumes. They are clearly disinterested parties to this proceeding because, as they have concluded, there is no evidence whatsoever connecting the Plaintiffs to this Adversary Proceeding to the Subject Property. This issue is baseless, as the Debtor well knows, and her Motion should be denied.

**II.    This Court's Judgment barring the Debtor from pursuing all of her claims due to judicial estoppel was not in clear error, will not result in manifest injustice, and was in fact, correct.**

The entire section of the Debtor's Memorandum titled "Application of Judicial Estoppel in General Demonstrates Clear Error that Will Result in Manifest Injustice" is nothing more than a rehash of the Debtor's arguments from her prior pleadings that this Court has already considered and rejected. The purpose of a Rule 59(e) Motion is **not** to allow a movant one more bite at the apple because she is displeased with the Court's ruling, and the Debtor's Motion should be denied. *Templet*, 367 F.3d at 479 (A Rule 59(e) Motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."); *Soto*, 2011 WL 4929423 at *1 ("Dissatisfaction with the court's decision … is not a legitimate basis" for granting relief under Rule 59(e)); *Atkins*, 130 F.R.D. at 626

11

("Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge.").

Despite the impropriety of the Debtor's attempt to re-submit her losing arguments to the Court, the Debtor's arguments in this regard fail for several reasons.  First, the Debtor falsely states that this Court did not consider her argument that judicial estoppel is an equitable remedy, as discussed by *New Hampshire v. Maine*, 532 U.S. 742 (2001) and *Reed v. City of Arlington*, 650 F.3d 571 (5th Cir. 2011).  To the contrary, the Court cited both *New Hampshire* and *Reed* at pgs. 11-12 of its Opinion in its discussion of the equitable nature of judicial estoppel and discussed how judicial estoppel "is not controlled by 'inflexible prerequisites or an exhaustive formula for determining its applicability.' *New Hampshire*, 532 U.S. at 751." Opinion, p. 12.

Further, the Court cited *Love v. Tyson Foods, Inc.*, 677 F.3d 258 (5th Cir. 2012), and discussed the burden shifting nature of the inadvertence requirement, or what the Debtor calls "the presumption of advertence," on p. 19 of its Opinion:  "Since the Plaintiffs presented this motivation to conceal, the burden of proof shifts to the Debtor to show that her failure to disclose the Subject Property and the Related Proceedings was inadvertent.  *Love*, 677 F.3d at 262." Opinion, p. 19.

The Debtor is wrong.  This Court did not apply a "presumption of advertence."  To the contrary, the Reynolds Plaintiffs overcame the initial presumption of ***inadvertence*** by submitting a legally recognized motivation to conceal – that the Debtor would be able to keep all of any recovery from her Related Proceedings to herself if this Court remained unaware of the Subject Property and the Related Proceedings.  The burden then shifted back to the Debtor, and she failed to prove that her failure to disclose was inadvertent.  Opinion, pp. 19-21.  This issue is without merit, and the Debtor's Motion should be denied.

Second, the Debtor's argument regarding her misinterpretation of *Stanley v. Cromwell (Estate of Wright)*, 829 So.2d 1274 (Miss. Ct. App. 2002), is exactly the kind of rehashed legal argument that cannot be re-raised through a Rule 59(e) Motion.  The Debtor cannot circumvent the fact that, as this Court correctly held, *Stanley (Estate of Wright)* held that, absent language in a will to the contrary, when a piece of real property passes to a beneficiary under a will – as was the case here – the claims related to that real property in an already-filed lawsuit pass as well.  Opinion, p. 14; *Estate of Wright*, 829 So.2d at 1277-1278.

In this regard, the Debtor contends on pgs. 10-11 of her Memorandum that the Court erred by stating that it was legally undisputed that the Debtor's interest in the Subject Property and the Related Proceedings immediately vested in her at the date of Mr. Donald's death.  She argues this statement was wrong because, well, *she* disputed it.  While this may be true (that the Debtor disputed the law), the Debtor did not support her "dispute" with anything other than her legally-unsupported opinion on the matter.  This "dispute" did not make the fact that her interest in the Subject Property and the claims related thereto immediately vested in her after her father's death any less true **under the law**.  For example, a party can dispute that the statute of limitations has run on a claim filed outside of the applicable statute, but that wouldn't make that fact any less true or undisputed, legally speaking, and such a manufactured "dispute" would not defeat Summary Judgment.

Third, the Debtor again submits the same failing, irrelevant arguments about the "inadvertence" factor of the judicial estoppel analysis. Memorandum, p. 11.  To start, the Debtor falsely alleges that this Court did not consider these arguments.  See the Opinion, pp. 18-21, for this Court's thorough discussion of the "inadvertence" factor.  Further, the Debtor again ignores the *actual* inadvertence test – that inadvertence occurs, legally speaking, only when "the debtor

either lacks knowledge of the undisclosed claims or has no motive for their concealment." Opinion, p. 18. All of the Debtor's red herrings, mainly dealing with her allegedly not knowing the law with regards to estates and inheritances,[7] are irrelevant because the undisputed facts in this record show that *she knew about the claims that she failed to disclose* and that *she had a motive for their concealment*. The Debtor failed to prove she acted inadvertently, as this Court correctly found.

Fourth, and finally, the Debtor again dredges up *Byrd v. Wyeth, Inc.*, 907 F.Supp.2d 803 (S.D. Miss. 2012), which was relied upon in the now-reversed District Court case of *Flugence v. Axis Surplus Ins. Co.*, 2012 WL 6726692 (W.D. La. 2012), again attempting to recycle another losing argument. The Debtor falsely states that the Court did not consider her argument that the Court should "consider the state of law" when the Debtor inherited the Subject Property and the claims related thereto from the Related Proceedings. However, the Debtor's argument was discussed in detail by the Court on pgs. 15-17 of its Opinion. That the Court did not directly cite *Byrd* in this discussion is of no pause, because the argument was clearly considered, vetted, and rejected. The Debtor's Motion should be denied.

\* \* \* \* \*

The Debtor simply cannot meet her burden to prove that manifest injustice will occur from this Court's Judgment. A similar situation arose in *Finley v. Florida Parish Juvenile Detention Center*, 2013 WL 4710404 (E.D. La. Aug. 30, 2013), where the plaintiff's lawsuit had been dismissed due to her failure to follow the Federal Rules of Civil Procedure. There, the Court held that "[t]he negligence or erroneous strategy choices of a party's attorney or the party himself, which contributed to the court's dismissal of the party's claims, do not amount to

---

[7] Besides, as this Court noted, the Debtor was represented by three separate sets of lawyers during the relevant time period. Opinion, p. 22.

manifest injustice." Further, and more importantly, the Court held that "[t]here is nothing 'unfair' or manifestly unjust about the court's enforcement of its deadlines, its Local Rules, and the appropriate Federal Rules of Civil Procedure in this matter, either before or after plaintiff hired an attorney." *Id.*

That is ***exactly*** the case here – the Debtor failed to follow applicable bankruptcy law, which resulted in this Court's Judgment barring her from pursuing her undisclosed claims in her Related Proceedings concerning her undisclosed Subject Property. There is nothing unjust, let alone *manifestly* unjust, about this. The Debtor's Motion should be denied.

## CONCLUSION

The Debtor is simply unhappy with the Court's Judgment, but unfortunately for the Debtor, "[d]issatisfaction with the court's decision … is not a legitimate basis" for granting relief under Rule 59(e). *Soto v. U.S.*, 2011 WL 4929423, *1 (D. Del. Oct. 17, 2011). "Whatever may be the purpose of Rule 59(e), it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990)(Motion for Reconsideration denied). For the reasons discussed above, the Debtor's Motion should be denied.

This the 5th day of January, 2015.

        Respectfully submitted,

        FINA OIL AND CHEMICAL COMPANY, MURPHY OIL U.S.A., INC., VINTAGE PETROLEUM, INC., CHAMPLIN PETROLEUM COMPANY, EXXON CORPORATION, ORYX ENERGY CORPORATION, TXO PRODUCTION, OXY USA INC., PLACID OIL COMPANY, AMOCO PRODUCTION COMPANY, UNION OIL COMPANY OF CALIFORNIA, PHILLIPS PETROLEUM COMPANY, CONOCO, INC., BASS ENTERPRISES PRODUCTION COMPANY, ARCO OIL AND GAS COMPANY, MOBIL OIL EXPLORATION & PRODUCING SOUTHEAST, INC., and INEXCO OIL COMPANY ("REYNOLDS PLAINTIFFS")

        */s/ Jeffery P. Reynolds*
        Jeffery P. Reynolds, MSB 5305
        Carson H. Thurman, MSB 104871

Of Counsel:

Jeffery P. Reynolds, P.A.
200 South Lamar Street, Suite 1050-S
P.O. Box 24597
Jackson, MS 39225
(601) 355-7773 (Telephone)
(601) 355-6364 (Facsimile)

John Moore, MSB 10610
John D. Moore, P.A.
301 Highland Park Cove, Suite B (39157)
P.O. Box 3344
Ridgeland, MS 39158
(601) 833-9131 (Telephone)

16

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that I have this day caused to be transmitted by ECF, electronic mail, and U.S. Mail a true and correct copy of the above and foregoing pleading to the following:

Michael G. Stag, Esq.  
Sean Cassidy, Esq.  
Merritt Cunningham, Esq.  
Smith Stag, LLC  
One Canal Place  
365 Canal Street, Suite 2850  
New Orleans, Louisiana 70130

C. Glen Bush, Esq.  
Barry Hassell, Esq.  
Copeland, Cook, Taylor & Bush, P.A.  
Post Office Box 6020  
Ridgeland, Mississippi 39157

Craig Panter, Esq.  
Elizabeth Crowell, Esq.  
Panter Law Firm, PLLC  
Post Office Box 2310  
Madison, Mississippi 39130

J.C. Bell, Esq.  
Sam Duncan, Esq.  
Office of Chapter 13 Standing Trustee  
P.O. Box 566  
Hattiesburg, MS 39403

Norman Gene Hortman, Jr., Esq.  
Hortman, Harlow, Bassi, Robinson & McDaniel, PLLC  
Post Office Drawer 1409  
Laurel, Mississippi 39441

THIS, the 5th day of January, 2015.

              ___/s/ Carson Thurman_____  
              Carson H. Thurman

17