

SO ORDERED.

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 6, 2015**

The Order of the Court is set forth below. The docket reflects the date entered.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **STACY HOWARD AND** | **CASE NO. 00-51897-NPO** |
| **STEPHANIE HOWARD,** | |
| | |
| **DEBTORS.** | **CHAPTER 13** |

| | |
|---|---|
| **FINA OIL AND CHEMICAL COMPANY;** | **PLAINTIFFS** |
| **MURPHY OIL U.S.A. INC.; VINTAGE** | |
| **PETROLEUM, INC. (NOW VINTAGE** | |
| **PETROLEUM, LLC); CHAMPLIN** | |
| **PETROLEUM COMPANY; EXXON** | |
| **CORPORATION; KERR-MCGEE OIL &** | |
| **GAS CORPORATION N/K/A ANADARKO** | |
| **US OFFSHORE CORPORATION, A** | |
| **FORMER AFFILIATE OF ORYX ENERGY** | |
| **CORPORATION; TXO PRODUCTION;** | |
| **PLACID OIL COMPANY; AMOCO** | |
| **PRODUCTION CO; UNION OIL** | |
| **COMPANY OF CALIFORNIA; PHILLIPS** | |
| **PETROLEUM COMPANY; CONOCO,** | |
| **INC.; BASS ENTERPRISES PRODUCTION** | |
| **COMPANY; ARCO OIL AND GAS** | |
| **COMPANY; MOBIL OIL EXPLORATION** | |
| **& PRODUCING SOUTHEAST, INC.;** | |
| **INEXCO OIL COMPANY; AND OXY USA** | |
| **INC.** | |

CONQUEST EXPLORATION COMPANY;                    INTERVENOR PLAINTIFFS
CHEVRON U.S.A. INC.; CHEVRON
CORPORATION; TEXACO INC.;
FOUR STAR OIL & GAS COMPANY;
SHELL WESTERN E&P, INC.; AND
MOON-HINES-TIGRETT OPERATING
COMPANY, INC.

VS.                                              ADV. PROC. NO. 14-05009-NPO

STEPHANIE HOWARD                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER
## DENYING: (1) DEBTOR'S MOTION TO ALTER OR AMEND
## JUDGMENT OR FOR NEW TRIAL; (2) MOTION TO STAY JUDGMENT
## PENDING MOTION TO ALTER OR AMEND JUDGMENT OR FOR NEW TRIAL
## OR, IN THE ALTERNATIVE, MOTION TO STAY PENDING APPEAL; AND (3)
## DEBTOR'S MOTION TO EXTEND DEADLINES TO FILE AMENDED SCHEDULES

These matters came before the Court[1] for hearing on January 30, 2015 (the "January 30

Hearing") on the Debtor's Motion to Alter or Amend Judgment or for New Trial (the "Motion to

Alter or Amend") (Adv. Dkt. 85)[2] filed by Stephanie Howard (the "Debtor");[3] the Motion to Stay

Judgment Pending Motion to Alter or Amend Judgment or for New Trial or, in the Alternative,

Motion to Stay Pending Appeal (the "Motion to Stay Judgment") (Adv. Dkt. 87) filed by the

Debtor; the Debtor's Motion to Extend Deadlines to File Amended Schedules (the "Motion to

---

[1]  The above-styled adversary proceeding (the "Adversary") and the above-styled
bankruptcy case (the "Bankruptcy Case") were transferred from the Honorable Katharine M.
Samson, United States Bankruptcy Judge, Southern District of Mississippi to the Honorable Neil
P. Olack, United States Bankruptcy Judge, Southern District of Mississippi on June 11, 2014.

[2]  Citations to the record are as follows: (1) citations to docket entries in the Adversary are
cited as "(Adv. Dkt. ___)"; and (2) citations to docket entries in the Bankruptcy Case are cited as
"(Bankr. Dkt. ___)".

[3]  The Bankruptcy Case was commenced by joint debtors, Stephanie Howard and Stacy
Howard ("Stacy Howard"), but the Court refers only to Stephanie Howard as the "Debtor"
because Stacy Howard is now deceased. Together, the Debtor and Stacy Howard are referred to
as the "Debtors."

Extend Deadlines") (Adv. Dkt. 89)[4] filed by the Debtor; the Plaintiffs' Response in Opposition to Debtor's Motion to Alter or Amend Judgment or for New Trial (the "Plaintiffs' Response to the Motion to Alter or Amend") (Adv. Dkt. 97) filed by Fina Oil and Chemical Company; Murphy Oil U.S.A. Inc.; Vintage Petroleum, Inc.; Champlin Petroleum Company; Exxon Corporation; Oryx Energy Corporation; TXO Production; Oxy USA Inc., Placid Oil Company; Amoco Production Company; Union Oil Company of California; Phillips Petroleum Company; Conoco, Inc.; Bass Enterprises Production Company; ARCO Oil and Gas Company; Mobil Oil Exploration & Producing Southeast, Inc.; and Inexco Oil Company (collectively, the "Reynolds Plaintiffs"); the Plaintiffs' Response in Opposition to Debtor's Motion to Stay Judgment Pending Motion to Alter or Amend Judgment or for New Trial or, in the Alternative, Motion to Stay Pending Appeal (the "Plaintiffs' Response to the Motion to Stay") (Adv. Dkt. 98) filed by the Reynolds Plaintiffs; the Plaintiffs' Response in Opposition to Debtor's Motion to Extend Deadlines to File Amended Schedules (the "Plaintiffs' Response to the Motion to Extend Deadlines") (Adv. Dkt. 99) filed by the Reynolds Plaintiffs; the Joinder of Conquest Exploration Company in the Response in Opposition to Debtor's Motion to Alter or Amend Judgment or for New Trial (the "Conquest Joinder in the Response to the Motion to Alter or Amend") (Adv. Dkt. 100) filed by Conquest Exploration Company ("Conquest"); the Joinder of Conquest Exploration Company in the Response in Opposition to Debtor's Motion to Stay Judgment Pending Motion to Alter or Amend Judgment or for New Tiral [*sic*] or, in the Altnerative [*sic*], Motion to Stay Pending Appeal (the "Conquest Joinder in the Response to the Motion to Stay") (Adv. Dkt. 101) filed by Conquest; the Joinder of Conquest Exploration Company in the Response in Opposition

---

[4] The Debtor also filed an identical version of the Debtor's Motion to Extend Deadlines to File Amended Schedules (Bankr. Dkt. 68) in the Bankruptcy Case. For clarity and brevity, the Court will refer to both versions collectively as the "Motion to Extend Deadlines."

to Debtor's Motion to Extend Deadlines to File Amended Schedules (the "Conquest Joinder in the Response to the Motion to Extend Deadlines") (Adv. Dkt. 102) filed by Conquest; the Joinder of Chevron U.S.A. Inc., Chevron Corporation, Texaco Inc., Four Star Oil & Gas Company, and Shell Western E&P, Inc. in the Response in Opposition to Debtor's Motion to Alter or Amend Judgment or for New Trial (the "Chevron/Shell Joinder in the Response to the Motion to Alter or Amend") (Adv. Dkt. 103) filed by Chevron U.S.A. Inc., Chevron Corporation, Texaco Inc., Four Star Oil & Gas Company, and Shell Western E&P, Inc. (collectively, "Chevron/Shell"); the Joinder of Chevron U.S.A. Inc., Chevron Corporation, Texaco Inc., Four Star Oil & Gas Company, and Shell Western E&P, Inc. in the Response in Opposition to Debtor's Motion to Stay Judgment Pending Motion to Alter or Amend Judgment or for New Trial or, in the Alternative, Motion to Stay Pending Appeal (the "Chevron/Shell Joinder in the Response to the Motion to Stay") (Adv. Dkt. 104) filed by Chevron/Shell; the Joinder of Chevron U.S.A. Inc., Chevron Corporation, Texaco Inc., Four Star Oil & Gas Company, and Shell Western E&P, Inc. in the Response in Opposition to Debtor's Motion to Extend Deadlines to File Amended Schedules (the "Chevron/Shell Joinder in the Response to the Motion to Extend Deadlines") (Adv. Dkt. 105) filed by Chevron/Shell; the Joinder of Moon-Hines-Tigrett Operating Company, Inc. in the Plaintiffs' Response in Opposition to Debtor's Motion to Alter or Amend Judgment or for New Trial (the "Moon-Hines-Tigrett Joinder in the Response to the Motion to Alter or Amend") (Adv. Dkt. 106) filed by Moon-Hines-Tigrett Operating Company, Inc. ("Moon-Hines-Tigrett"); the Joinder of Moon-Hines-Tigrett Operating Company, Inc. in the Plaintiffs' Response in Opposition to Debtor's Motion to Stay Judgment Pending Motion to Alter or Amend Judgment or for New Trial or, in the Alternative, Motion to Stay Pending Appeal (the "Moon-Hines-Tigrett Joinder in the Response to the Motion to Stay")

(Adv. Dkt. 107) filed by Moon-Hines-Tigrett; the Joinder of Moon-Hines-Tigrett Operating Company, Inc. in the Plaintiffs' Response in Opposition to Debtor's Motion to Extend Deadlines to File Amended Schedules (the "Moon-Hines-Tigrett Joinder in the Response to the Motion to Extend Deadlines") (Adv. Dkt. 108) filed by Moon-Hines-Tigrett;[5] and the Defendant's Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Alter or Amend Judgment or for New Trial (Adv. Dkt. 109) filed by the Debtor. The Court, after considering the pleadings and arguments of counsel, ruled from the bench denying (1) the Motion to Alter or Amend; (2) the Motion to Stay; and (3) the Motion to Extend Deadlines. This Opinion memorializes and supplements the Court's bench ruling.

---

[5] The three (3) joinder pleadings each filed by Conquest, Chevron/Shell, and Moon-Hines-Tigrett all join in and request the same relief as the Plaintiffs' Response to the Motion to Alter or Amend, the Plaintiffs' Response to the Motion to Stay, and the Plaintiffs' Response to the Motion to Extend Deadlines, respectively. For clarity and brevity, the Court will refer to the Conquest Joinder in the Response to the Motion to Alter or Amend, the Chevron/Shell Joinder in the Response to the Motion to Alter or Amend, the Moon-Hines-Tigrett Joinder in the Response to the Motion to Alter or Amend, and the Plaintiffs' Response to the Motion to Alter or Amend collectively as the "Plaintiffs' Response to the Motion to Alter or Amend." In addition, the Court will refer to the Conquest Joinder in the Response to the Motion to Stay, the Chevron/Shell Joinder in the Response to the Motion to Stay; the Moon-Hines-Tigrett Joinder in the Response to the Motion to Stay, and the Plaintiffs' Response to the Motion to Stay collectively as the "Plaintiffs' Response to the Motion to Stay." The Court will also refer to the Conquest Joinder in the Response to the Motion to Extend Deadlines, the Chevron/Shell Joinder in the Response to the Motion to Extend Deadlines, the Moon-Hines-Tigrett Joinder in the Response to the Motion to Extend Deadlines, and the Plaintiffs' Response to the Motion to Extend Deadlines collectively as the "Plaintiffs' Response to the Motion to Extend Deadlines." Finally, the Court will refer to the Reynolds Plaintiffs, Conquest, Chevron/Shell, and Moon-Hines-Tigrett collectively as the "Plaintiffs".

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this case pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Notice of the Motion to Alter or Amend, the Motion to Stay, and the Motion to Extend Deadlines was proper under the circumstances.

## Facts[6]

1.      In 1991, the Debtor's father, Gerald Donald ("Donald"), acquired real property located in Wayne County, Mississippi (the "Subject Property") from a bank that had foreclosed on the Subject Property.

2.      In 1996 and 1998, Donald filed two (2) nearly-identical lawsuits[7] against several parties, including the Plaintiffs, seeking damages related to the contamination of the Subject Property from the disposal of radioactive materials and other hazardous substances.

3.      On May 5, 2000, the Debtors filed a petition for relief (Adv. Dkt. 45, Ex. 11) pursuant to chapter 13 of the United States Bankruptcy Code. On August 7, 2000, the Debtors filed statements and schedules regarding their income, expenses, and creditors (the "Statements and Schedules") (Adv. Dkt. 45, Ex. 22). At that time, no information relating to the Subject

---

[6] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[7] The first lawsuit, now titled *Stephanie Howard, Executrix of the Estate of Gerald Donald v. Fina Oil and Chemical Company, et al*., No. 5-97-55 (the "Circuit Court Lawsuit"), was filed on May 17, 1996 in the Circuit Court of Hinds County, Mississippi and subsequently was transferred to the Circuit Court of Wayne County, Mississippi (the "Circuit Court"). The second lawsuit, now titled *Stephanie Howard, Executrix of the Estate of Gerald Donald v. Marvin Lewis Davis et al.*, No. 2:98-CV-15-KS-MTP (the "District Court Lawsuit"), was filed on January 20, 1998 in the United States District Court for the Southern District of Mississippi (the "District Court").

Property, the Circuit Court Lawsuit, or the District Court Lawsuit appeared in the Statements or Schedules.

4.      On November 6, 2000, the Court entered the Order Confirming Plan, Awarding Fees, and Adjudicating Related Matters (Adv. Dkt. 45, Ex. 15) confirming the Debtors' chapter 13 plan.

5.      Donald died on January 15, 2001. The Debtor was Donald's sole heir and beneficiary. (Adv. Dkt. 45, Ex. 17 at 24-25).

6.      On February 1, 2001, the Debtor filed the Petition for Probate of Will and Letters Testamentary (Adv. Dkt. 45, Ex. 17 at 8) in the Chancery Court for the Second Judicial District of Jones County, Mississippi (the "Chancery Court") and was appointed the executrix of Donald's estate pursuant to the Chancery Court's Order Admitting Will to Probate and Granting Letters Testamentary (*Id.* at 24-26).

7.      The Debtor filed the Motion to Substitute Plaintiffs (Adv. Dkt. 1, Ex. 7) in the Circuit Court on March 29, 2001. On April 6, 2001, the Debtor, in her capacity as the executrix of Donald's estate, was substituted for Donald as the plaintiff in the Circuit Court Lawsuit (Adv. Dkt. 1, Ex. 10).

8.      On February 18, 2005, the Debtor, in her capacity as the executrix of Donald's estate, was substituted for Donald as the plaintiff in the District Court Lawsuit (Adv. Dkt. 1, Ex. 11).[8]

9.      On August 10, 2005, J.C. Bell, the standing chapter 13 trustee (the "Trustee"), filed the Final Report and Account (Bankr. Dkt. 42). On August 15, 2005, the Court entered the

---

[8] According to the Order substituting the Debtor as plaintiff in the District Court Lawsuit, the Debtor filed the motion to substitute in May 2004. (Adv. Dkt. 1, Ex. 11 at 1-2).

Discharge of Debtor After Completion of Chapter 13 Plan (Bankr. Dkt. 43) and the Final Decree/Order Closing Case (Bankr. Dkt. 44).

10.   On December 12, 2005, the Circuit Court issued a Memorandum Opinion (Adv. Dkt. 1, Ex. 12) directing the Debtor either to exhaust her administrative clean-up remedies with the Mississippi Commission on Environmental Quality ("MCEQ"), which has the exclusive authority over such matters, or to proceed with the Circuit Court Lawsuit without being allowed to seek damages for the possible clean-up of the Subject Property. The Debtor then filed the Petition and Request for Hearing (Adv. Dkt. 1, Ex. 5) with the MCEQ on January 9, 2006 (the "MCEQ Litigation").[9]

11.   On December 8, 2011, the Chancery Court entered the Order Baring [sic] Claims, Waiving First and Final Accounting, Distributing Assets, Discharging Executrix and Closing Estate (Adv. Dkt. 50, Ex. 9) closing Donald's estate, discharging the Debtor as executrix of the estate, and distributing the estate's assets.

12.   The Plaintiffs discovered the existence of the Bankruptcy Case in July 2013. Soon thereafter, the Plaintiffs raised the defense of judicial estoppel in the Circuit Court Lawsuit, the District Court Lawsuit, and the MCEQ Litigation (collectively, the "Related Proceedings"). According to the Debtor and the Plaintiffs, all of the Related Proceedings are currently stayed.

13.   On September 24, 2013, the Debtor filed the Motion to Vacate Final Decree and to Re-open Case to Amend Schedules and State [sic] of Financial Affairs (the "Motion to Reopen") (Bankr. Dkt. 50) requesting the Court to reopen the Bankruptcy Case so that the Statements and Schedules could be amended "to disclose Mrs. Howard's interest in civil actions

---

[9] The Debtor subsequently filed an Amended Petition and Request for Hearing (Adv. Dkt. 1, Ex. 6) on March 24, 2011 adding the Plaintiffs as defendants.

(one in the Circuit Court of Wayne County, Mississippi and one in Federal District Court, Southern District of Mississippi) to recover damages resulting from property contamination." On November 25, 2013, the Court entered the Order Vacating Final Decree and Re-Opening Proceeding (Bankr. Dkt. 61) granting the Motion to Reopen.

14.     On February 12, 2014, the Reynolds Plaintiffs filed the Complaint for Declaratory Judgment (Adv. Dkt. 1) in the Adversary arguing that the Debtor should be judicially estopped from pursuing her claims in the Related Proceedings because she never disclosed her inheritance of the Subject Property or the Related Proceedings to the Court or Trustee during the pendency of the Bankruptcy Case. Conquest, Moon-Hines-Tigrett and Chevron/Shell subsequently intervened in the Adversary.

15.     On May 1, 2014, the Reynolds Plaintiffs filed the Plaintiffs' Motion for Summary Judgment (the "Plaintiffs' Summary Judgment Motion") (Adv. Dkt. 45), and Conquest, Chevron/Shell, and Moon-Hines-Tigrett subsequently joined in the Plaintiffs' Summary Judgment Motion.

16.     Also on May 1, 2014, the Debtor filed the Motion for Summary Judgment (the "Debtor's Summary Judgment Motion") (Adv. Dkt. 49) and the Brief in Support of Motion for Summary Judgment (the "Brief in Support of the Debtor's Summary Judgment Motion") (Adv. Dkt. 50).

17.     The Plaintiffs' Summary Judgment Motion and the Debtor's Summary Judgment Motion came before the Court for hearing (the "Summary Judgment Hearing") on September 3, 2014.   The Court took the summary judgment motions under advisement and issued the Memorandum Opinion and Order: (1) Granting the Plaintiffs' Summary Judgment Motion and (2) Denying the Debtor's Summary Judgment Motion (Adv. Dkt. 81) and the Final Judgment on

the Plaintiffs' Summary Judgment Motion and the Debtor's Summary Judgment Motion (Adv. Dkt. 82) (collectively, the "Court's Judgment") on October 27, 2014. In the Court's Judgment, the Court held that the Debtor is judicially estopped from pursuing her claims in the Related Proceedings. The Court, however, held that the Trustee is not judicially estopped from pursing the Debtor's claims in the Related Proceedings for the benefit of the Debtor's creditors. In addition, the Court held that the Debtor was required to amend her Statements and Schedules within fourteen (14) days to properly disclose her interests in the Subject Property and the Related Proceedings.

18.     On November 10, 2014, the Debtor filed the Motion to Alter or Amend, the Motion to Stay, and the Motion to Extend Deadlines.

19.     The Plaintiffs then filed the Plaintiffs' Response to the Motion to Alter or Amend, the Plaintiffs' Response to the Motion to Stay, and the Plaintiffs' Response to the Motion to Extend Deadlines.

20.     On January 29, 2015, the Debtor filed an Amended Schedule A – Real Property (the "Amended Schedule A") (Bankr. Dkt. 86) and an Amended Statement of Financial Affairs (the "Amended SOFA") (Bankr. Dkt. 87), which provided additional information regarding the Subject Property and the Related Proceedings.

21.     At the January 30 Hearing, Jeffery P. Reynolds argued on behalf of the Plaintiffs, and Sean S. Cassidy argued on behalf of the Debtor.

**Discussion**

**A.     Motion to Alter or Amend**

In the Motion to Alter or Amend, the Debtor requests the Court to alter or amend the

Court's Judgment under Rule 59(e) of the Federal Rules of Civil Procedure ("Rule 59(e)"),[10] as

made applicable to the Adversary by Rule 9023 of the Federal Rules of Bankruptcy Procedure,

because the Court's Judgment is manifestly erroneous and would cause manifest injustice. The

grounds for granting a motion to alter or amend a judgment under Rule 59(e) are (1) an

intervening change in controlling law; (2) the availability of new evidence not previously

available; or (3) the need to correct clear error or prevent manifest injustice. *Jones v. Stephens*,

998 F. Supp. 2d 529, 536 (N.D. Tex. 2014) (citing *In re Benjamin Moore & Co.*, 318 F.3d 626,

629 (5th Cir. 2002)). In the instant matter, the Debtor is proceeding only under the third ground:

the need to correct clear error or prevent manifest injustice.

---

[10]     Although the Debtor labeled the motion as "Debtor's Motion to Alter or Amend
Judgment or for New Trial," the Debtor states that she is proceeding only under Rule 59(e). Rule
59(e) only pertains to a motion to alter or amend a judgment, whereas Rule 59(a)-(c) of the
Federal Rules of Civil Procedure apply to a motion for a new trial. Further, the Debtor's
Memorandum in Support of Motion to Alter or Amend Judgment or for New Trial (the "Debtor's
Brief in Support of Motion to Alter or Amend") (Adv. Dkt. 86) filed by the Debtor states that the
Debtor is seeking relief solely under "Rule 9023 and Rule 59(e)" and only includes arguments
and legal authorities related to a motion to alter or amend a judgment. Finally, at the January 30
Hearing, the Debtor only argued that the Court should reconsider, alter, or amend the Court's
Judgment. The Debtor did not request, nor put forth any argument, that the Court should grant a
new trial in the Adversary. For these reasons, although the motion is labeled as also requesting a
new trial, the Court determines that the true nature of the motion, according to its substance
rather than its label, is a motion to alter or amend a judgment pursuant to Rule 59(e). *See
Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936 (5th Cir. 2005) ("[W]e have oft
stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should
be determined by substance, not a label.'") (citing *Edwards v. City of Houston*, 78 F.3d 983, 995
(5th Cir. 1996) (quoting *Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)).
To the extent the Debtor does request a new trial, the request is denied (1) for the same reasons
provided in this Opinion as to why the Motion to Alter or Amend is denied and (2) because the
Debtor has provided no argument or reasons why the Court should order a new trial in the
Adversary.

The Motion to Alter or Amend is divided into two requests. The Debtor first requests the Court to alter or amend the Court's Judgment only to the extent that it holds that the Debtor is judicially estopped from pursuing her claims in the Related Proceedings that are for declaratory and/or injunctive relief. The Debtor's second request is that the Court alter or amend the Court's Judgment applying judicial estoppel to all the Debtor's claims in the Related Proceedings. The Court will address each of these requests in turn.

### 1.      Debtor's Claims Seeking Declaratory and/or Injunctive Relief

The Debtor cites two principal reasons why the Court should grant her request to alter or amend the portion of the Court's Judgment that finds the Debtor is judicially estopped from pursuing her claims in the Related Proceedings seeking declaratory and/or injunctive relief. First, the Debtor claims that the Court erred in its analysis of the third element of judicial estoppel: that the Debtor did not act inadvertently in failing to disclose her interests in the Subject Property and the Related Proceedings. Specifically, the Debtor argues that the Court erred by finding that the motivation sub-element was satisfied with respect to the Debtor's claims seeking declaratory and/or injunctive relief. Second, the Debtor claims that if she is not allowed to pursue her claims seeking declaratory and/or injunctive relief, then the contaminated Subject Property will adversely affect the environment and surrounding properties, as well as subject the Debtor to potential financial liability. According to the Debtor, due to both of these reasons, the Court's Judgment holding that the Debtor is judicially estopped from pursuing her claims for declaratory and/or injunctive relief is erroneous and will result in manifest injustice. The Court will now address each of these reasons.

> a.   **Whether the Court Erroneously Held that the Motivation Sub-Element of Judicial Estoppel Was Satisfied**

A debtor's failure to satisfy his or her duty to disclose is "inadvertent" only when "the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (citing *Browning Mfg. v. Mims (In re Coastal Plains)*, 179 F.3d 197, 207-08 (5th Cir. 1999)). In the Court's Judgment, the Court applied the burden-shifting analysis articulated by the Fifth Circuit Court of Appeals in *Love* and held that because the Plaintiffs presented a motive to conceal (the prospect of keeping any potential recovery for herself at the expense of her creditors), the burden of proof shifted to the Debtor to show that her failure to disclose was inadvertent. (Adv. Dkt. 81 at 18-19), *see also Love*, 677 F.3d at 262 ("[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.") (quotation omitted). The Court then held that the third element of judicial estoppel was satisfied because the Debtor failed either to set forth any viable argument or to otherwise create a fact issue whether she acted inadvertently. (Adv. Dkt. 81 at 21).

The Debtor now claims that it is impossible for the motivation sub-element to be met as to her claims that seek injunctive and/or declaratory relief instead of monetary relief. Specifically, the Debtor argues that there is no motive to conceal her claims requesting that the Plaintiffs either be required to remediate the Subject Property or be held liable for the costs of remediation because any potential relief could not have benefited her creditors and, thus, the third element of judicial estoppel (that the Debtor did not act inadvertently) is not satisfied.

In support of her position, the Debtor provides citations to a few cases where courts have held or recognized that a debtor is not judicially estopped from pursuing a non-disclosed claim

that would not have added value to the bankruptcy estate even if it was disclosed properly. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) ("[Debtor's] claim for injunctive relief (i.e. her request for reinstatement) would have added nothing of value to the bankruptcy estate even if she properly disclosed it."); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1289 (11th Cir. 2002) ("We conclude that [the debtor's] undisclosed claim [alleging employment discrimination] offered nothing of value to the estate and was of no consequence to the trustee or the creditors."); *Grillo v. JPMorgan Chase & Co.*, No. 13-cv-03233-RBJ-KLM, 2014 WL 2442534 (D. Colo. May 30, 2014) (holding that judicial estoppel did not apply to the debtor when, *inter alia*, his claims seeking injunctive relief were not property of the estate and could not generate any financial value for the estate); *Bridgewater v. Northrop Grumman Ship Sys., Inc.*, No. 1:06CV769HSO-JMR, 2007 WL 4224212 (S.D. Miss. Nov. 29, 2007) (noting that the debtor would not normally be judicially estopped from pursuing his employment discrimination claims because they would not have added any value to his bankruptcy estate).

Relief under Rule 59(e) is "an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted). It "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* at 478-79 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)); *see also Henderson v. Comm. Bank of Miss. (In re Evans)*, No. 09-03763-NPO, 2012 WL 393255, at *3 (Bankr. S.D. Miss. Feb. 6, 2012) ("A Rule 59(e) motion may not be used to relitigate old issues."). A manifest error of law is "one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *In re Evans*, 2012 WL 393255, at *3 (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir.2004)). There is no general definition of manifest injustice, as courts instead evaluate whether there has

been such an injustice on a case-by-case basis. *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 WL 1952265, at *4 (S.D. Tex. May 30, 2012) (citations omitted). Some courts have held "that a showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Id.* (citations omitted).

The Court finds that the Debtor's argument that her claims for declaratory and/or injunctive relief in the Related Proceedings should not be judicially estopped is an argument that could have been raised before the entry of the Court's Judgment and, thus, is not a proper argument under Rule 59(e). *See Templet*, 367 F.3d at 479; *Catholic Diocese of Biloxi, Inc. v. Sebelius*, No. 1:12CV158-HSO-RHW, 2013 WL 690990, at *2 (S.D. Miss. Feb. 15, 2013). At the January 30 Hearing, the Debtor stated that she did not raise this argument during the summary judgment phase of the Adversary because her discussion then was limited to the issues raised by the Plaintiffs in the Plaintiffs' Summary Judgment Motion. The Court, however, notes that in both the Response in Opposition to Plaintiffs' Motion for Summary Judgment (the "Debtor's Response to Plaintiffs' Summary Judgment Motion") (Adv. Dkt. 60) and the Brief in Support of the Debtor's Summary Judgment Motion, the Debtor discussed and disputed the Plaintiffs' assertion that the motivation sub-element was satisfied with respect to the Debtor's claims in the Related Proceedings. (*See* Adv. Dkt. 60 at 11-12; Adv. Dkt. 50 at 8). The Debtor, however, did not make any distinction between her claims seeking monetary relief and her claims seeking declaratory and/or injunctive relief in either pleading. She also failed to raise the argument while discussing the motive sub-element at the Summary Judgment Hearing or at any other point prior to the Motion to Alter or Amend.

Now, through the Motion to Alter or Amend, the Debtor is attempting to assert a new legal argument and cite newly discovered case law regarding whether the motivation sub-element is satisfied in her situation. As previously explained, Rule 59(e) is the not the proper vehicle to raise legal arguments or provide newly discovered case law that should have been raised prior to the judgment. *See Templet*, 367 F.3d at 478-79; *Evans*, 2012 WL 393255, at *3. Thus, the Court finds that the Debtor's argument distinguishing her claims for declaratory and/or injunctive relief in the Motion to Alter or Amend should be denied.[11] Further, the Court finds that the Debtor has not demonstrated "a complete disregard of the controlling law" regarding the application of judicial estoppel to the Debtor's claims for declaratory and/or injunctive relief. *See In re Evans*, 2012 WL 393255, at *3. As a result, the Court finds that the Debtor has not shown a manifest error of law that warrants relief under Rule 59(e).

> **b.      Whether the Application of Judicial Estoppel to the Debtor's Claims for Declaratory and/or Injunctive Relief Will Result in Manifest Injustice**

In the Debtor's Brief in Support of Motion to Alter or Amend, the Debtor argues that the second principal reason the Court should alter or amend the Court's Judgment with respect to her claims that seek declaratory and/or injunctive relief is that if the Debtor is not allowed to pursue these specific claims, then the contaminated Subject Property would adversely affect the environment, negatively affect the surrounding properties, and subject the Debtor to potential financial liability. According to the Debtor, the Court's Judgment holding that the Debtor is

---

[11]   The Court notes that even if the Debtor's argument regarding the motivation sub-element of inadvertence and her claims for declaratory and/or injunctive relief was proper at this juncture, the Debtor's argument would likely fail on the merits. At the January 30 Hearing, the Debtor conceded that her claims requesting that the Plaintiffs either be required to remediate the Subject Property or be held liable for the costs of remediation, if successful, would bring value to the Subject Property and benefit the bankruptcy estate.

judicially estopped from pursuing her claims for declaratory and/or injunctive relief will result in manifest injustice.

The Court is not persuaded that the application of judicial estoppel to the Debtor will result in manifest injustice. In the Debtor's Brief in Support of Motion to Alter or Amend, the Debtor briefly states that environmental harm will result from her being judicially estopped from pursuing her claims for declaratory and/or injunctive relief. (Adv. Dkt. 86 at 8-9). The Debtor, however, does not go into much detail regarding the contamination or environmental harm. Further, the Debtor did not address this argument at all during the January 30 Hearing.

The Plaintiffs, on the other hand, argue that the litigation between the Debtor and the Plaintiffs about the contamination of the Subject Property has been ongoing in some form or another for more than eighteen (18) years. In addition, the MCEQ has been involved in the matter for more than nine (9) years. According to the Plaintiffs, if there was an imminent environmental threat to surrounding properties, some remedial action would have occurred by now, either by the MCEQ or another party. The Court finds the Plaintiffs' argument persuasive and finds that the Debtor has not sufficiently identified any manifest injustice that needs to be corrected. *See Catholic Diocese of Biloxi*, 2013 WL 690990, at *2 (finding that the movant under Rule 59(e) failed to sufficiently identify any manifest injustice that needed to be corrected). Moreover, in the Court's Judgment, the Court specifically held that the Trustee is not judicially estopped from pursuing the Debtor's claims in the Related Proceedings. Therefore, assuming there is a pressing environmental concern with the remediation of the Subject Property, the Trustee is able to pursue the Debtor's claims for declaratory and/or injunctive relief even though the Debtor is judicially estopped from doing so herself. Therefore, the Court finds that the portion of the Motion to Alter or Amend, which requests to alter or amend the Court's Judgment

as to only the Debtor's claims for declaratory and/or injunctive relief, should be denied because the Debtor has failed to demonstrate that the Court committed a manifest error in law or that the Court's Judgment will result in manifest injustice.

2.      **Debtor's Claims in General**

The Debtor's second request in the Motion to Alter or Amend is that the Court alter or amend the Court's Judgment applying judicial estoppel to the Debtor's claims in the Related Proceedings in general. According to the Debtor, the Court's holding that the Debtor is judicially estopped from pursuing her claims in the Related Proceedings is erroneous and will result in manifest injustice. The Debtor then proceeds to restate several legal arguments that she made in the Brief in Support of the Debtor's Summary Judgment Motion, in the Debtor's Response to Plaintiffs' Summary Judgment Motion, in the Defendant's Reply to Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (Adv. Dkt. 67), and at the Summary Judgment Hearing. Specifically, the Debtor argues that the Court erred in its analysis and interpretation of relevant case law and its analysis as to the Debtor's alleged inadvertence regarding her failure to disclose the Subject Property and the Related Proceedings. All of the Debtor's arguments contained in this portion of the Motion to Alter or Amend are arguments that the Debtor made prior to the Court's Judgment and, therefore, are arguments the Court considered when it presided over the Summary Judgment Hearing and issued the Court's Judgment. As previously discussed, motions under Rule 59(e) are not the proper vehicle for rehashing arguments or legal theories. *Templet*, 367 F.3d at 478-79; *In re Evans*, 2012 WL 393255, at *3; 11 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2012) ("The Rule 59(e) motion may not be used to relitigate old matters."). Here, the Debtor is attempting to relitigate all of her legal claims by raising arguments that are identical to

those she made in nearly every pleading filed prior to the Court's Judgment and at the Summary Judgment Hearing. It should not be supposed that Rule 59(e) "is intended to give an unhappy litigant one additional chance to sway the judge." *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D. Miss. 1990) (quoting another source).  Further, the Court finds that the Debtor has not demonstrated "a complete disregard of the controlling law" regarding the application of judicial estoppel to the Debtor's claims in the Related Proceedings as a whole or "a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *See In re Evans*, 2012 WL 393255, at *3; *Bender Square Partners*, 2012 WL 1952265, at *4. As a result, the Court finds that the Debtor has not shown a manifest error of law or that the Court's Judgment will result in manifest injustice so that relief under Rule 59(e) is warranted. The Court accordingly finds that the second part of the Motion to Alter or Amend should also be denied.

In summation, the Court finds that both of the Debtor's requests in the Motion to Alter or Amend do not warrant relief under Rule 59(e). Most of the Debtor's arguments are an attempt to relitigate old issues or rehash arguments that could have been made prior to the Court's Judgment. Further the Debtor has failed to demonstrate either a manifest error in law or that the Court's Judgment will create manifest injustice. For these reasons, the Court finds that the Motion to Alter or Amend should be denied.

**B.      Motion to Stay**

In the Motion to Stay, the Debtor asks the Court to stay the effects of the Court's Judgment pending the Court's disposition of the Motion to Alter or Amend. The Debtor also requests that, in the event the Motion to Alter or Amend is denied, the Court stay the effects of the Court's Judgment pending appeal.

Under Rule 7062 of the Federal Rules of Bankruptcy Procedure, the Court "may stay the execution of a judgment – or any proceedings to enforce it – pending disposition of [a motion] under Rule 59, for a new trial or to alter or amend a judgment." FED. R. BANKR. P. 7062(b)(3). Here, as previously discussed, the Court holds that the Motion to Alter or Amend should be denied, thereby disposing of the Motion to Alter or Amend. As a result, the Motion to Stay pending the disposition of the Motion to Alter or Amend is now moot. For this reason, the portion of the Motion to Stay that requests the Court to stay the effects of the Court's Judgment pending the Court's disposition of the Motion to Alter or Amend should be denied.

As for the portion of the Motion to Stay that requests the Court to stay the effects of the Court's Judgment pending appeal, the Court finds that the motion is premature as there is no pending appeal in the Adversary. Thus, the Court finds that the Motion to Stay should be denied as to that portion as well. The Court, however, notes that while a motion to stay pending appeal is premature at this time, the Debtor is not precluded from pursuing another motion to stay pending appeal in the event the Debtor timely appeals the Court's Judgment.

## C.    Motion to Extend Deadlines

In the Motion to Extend Deadlines, the Debtor requests an extension of time to file amended Statements and Schedules as required by the Court's Judgment. At the January 30 Hearing, the Debtor argued that the Motion to Extend Deadlines is now moot because she filed the Amended Schedule A and the Amended SOFA. The Plaintiffs argued at the January 30 Hearing that despite the Amended Schedule A and the Amended SOFA, the Statements and Schedules still do not completely and accurately disclose the Debtor's interests in the Subject Property and the Related Proceedings.

The Court agrees with the Debtor and finds that the Motion to Extend Deadlines is now moot. On September 24, 2013, the Debtor filed the Motion to Reopen "to disclose Mrs. Howard's interest in civil actions (one in the Circuit Court of Wayne County, Mississippi and one in Federal District Court, Southern District of Mississippi) to recover damages resulting from property contamination." (Bankr. Dkt. 50 at 1). The Court granted the motion and reopened the Bankruptcy Case for the sole purpose of "allow[ing] the amendment of relevant schedules and state of financial affairs." (Bankr. Dkt. 61, at 1). In the Court's Judgment, the Court held that the Debtor has a duty to disclose her interests in the Subject Property and the Related Proceedings. (*See* Adv. Dkt. 81, Part B.2.a.). Thus, the Court held that the Debtor was required to amend her Statements and Schedules to disclose her interests in the Subject Property and the Related Proceedings within fourteen (14) days of the date of the Court's Judgment.

In the Motion to Extend Deadlines that is currently before the Court, the Debtor requests that the deadline to amend the Statements and Schedules be extended until fifteen (15) days after the Court rules on the Motion to Alter or Amend and the Motion to Stay. The Motion to Extend Deadlines is now moot because the Debtor amended her Statements and Schedules prior to the January 30 Hearing. The Motion to Extend Deadlines does not request, nor does the Court render, any adjudication as to whether the amended Statements and Schedules comply with the United States Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. If the Trustee or another appropriate party believes that the Debtor's amended Statements and Schedules are insufficient in the Bankruptcy Case, they may bring it to the Court's attention through an appropriate motion. For these reasons, the Court finds that the Motion to Extend Deadlines is moot and, therefore, should be denied.

**Conclusion**

For the above and foregoing reasons, the Court finds that (1) the Motion to Alter or Amend should be denied; (2) the Motion to Stay should be denied; and (3) the Motion to Extend Deadlines should be denied.

IT IS, THEREFORE, ORDERED THAT the Motion to Alter or Amend hereby is denied.

IT IS FURTHER ORDERED THAT the Motion to Stay hereby is denied.

IT IS FURTHER ORDERED THAT the Motion to Extend Deadlines hereby is denied.

##END OF OPINION##